UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JACQUELINE RISICA
On behalf of her minor son
JUSTIN RISICA,
      -Plaintiff


  -vs-                                  3:02-CV-00449 (DJS)(TPS)


SUSAN DUMAS, ET AL.,
      -Defendants.

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff, a former student at Mystic Middle School brings this action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.  Plaintiff brings three federal claims.  First, plaintiff claims that he was denied procedural due process when he was suspended for ten days for making a "hit list."  Second, plaintiff also claims that his substantive due process rights were violated when the school allegedly failed to intervene to prevent bullying, harassment and name-calling from other students.  Finally, plaintiff claims that his right to privacy under the Fourteenth Amendment was infringed when the defendant, Susan Dumas, Principal of Mystic Middle School, allegedly disclosed the "hit list" and the fact of plaintiff's suspension to a female student named in the "hit list" and to Principal Dumas's administrative staff.

Plaintiff also brings state law tort claims of invasion of

privacy and intentional infliction of emotional distress.

Defendant Dumas moves for summary judgment pursuant to Fed. R. Civ. P. 56(b).[1]  For the reasons more fully explained herein, defendant's motion **(Dkt. #115)** is **GRANTED** in all respects.  The federal claims are dismissed with prejudice.  The state law claims are dismissed without prejudice.

## I.    Standard for Summary Judgment

The standards governing summary judgment are well-settled. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "An issue of fact is 'genuine' where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Giordano v. City of New York, 274 F.3d 740, 746 (2d Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "A fact is 'material' if it 'might

---

[1]

Only defendant Dumas has moved for Summary Judgment.  Absent some argument to the contrary, it would appear from a reading of the docket sheet that the case against defendants Schroder and Woodworth remains pending.

affect the outcome of the suit under the governing law.'" <u>Id.</u> at
746-47.  If evidence exists from which a reasonable inference could
be drawn in favor of the nonmoving party, summary judgment is
improper.  <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir.
1996).  All factual inferences are to be drawn in favor of the
party against whom summary judgment is sought.  <u>Ramseur v. Chase
Manhattan Bank</u>, 865 F.2d 460, 465 (2d Cir. 1989).

## II.   **Facts**

The following facts are uncontroverted or reasonably appear
beyond dispute.[2]

On November 14, 2000 the plaintiff, Justin Risica, entered
Mystic Middle School ("the School") after transferring from a
school in Rhode Island.  Risica was in seventh grade at the time
and received education and related services pursuant to an
Individualized Education Program ("IEP").  Soon after he began
attending the School, Risica began being harassed by approximately
fifty students.  The harassment included name calling, but did not
involve physical assaults or physical threats.  Plaintiff was
called, among other derogatory things, "fag" and "homo."  After
becoming aware of the harassment, Principal Dumas spoke with one of
the students Risica identified as a harasser.  Plaintiff alleges

---

[2]     Unless otherwise noted, the facts are derived from
statements admitted to by the plaintiff in Defendant's Rule
56(a)(1) Statement of Undisputed Facts or from Plaintiff's Rule
56(a)(2) Statement of Material Facts in Dispute.

that Dumas's efforts had no effect and that the harassment continued.

On February 26, 2001 a janitor at the School found plaintiff's geography book which contained a "hit list." The list contained the name of a female student. Neither party contends that Risica intended to kill the female student, however, the facts most favorably construed for plaintiff's benefit do show that Risica may have wanted to punch the female student. Risica admitted to making the list.

As a result of the "hit list" Risica was suspended for ten days. An emergency planning and placement team ("PPT") meeting was held to determine whether changes needed to be made to Risica's educational program. The PPT determined that Risica would be required to see a psychiatrist, Dr. Ken Selig, before being permitted to return to school. Dr. Selig recommended that Risica remain out of school for the remainder of the year. The School provided Risica with a tutor. On August 20, 2001 Dr. Selig also recommended that Risica not return to Mystic Middle School. Thereafter Risica attended Wheeler High School in North Stonington.

The evidentiary record also suggests that Dumas talked to the female student listed on the Risica's "hit list" and told her that she was on an "asshole list" Risica had created. Risica testified in his deposition that he believed Dumas told defendants Schroder and Woodworth about Risica's situation. Schroder and Woodworth

-4-

were secretaries working in Dumas's office.  Plaintiff alleges that
Schroder and Woodworth spoke openly about his situation in the
public waiting area outside Dumas's office, within earshot of many
students.  (See Dkt.# 124 Ex. 1 at 37-40.)  Plaintiff further
testified that after the public conversation between Schroder and
Woodworth, rumors regarding his situation began circulating around
the school.  (Id.)  The rumors erroneously reported that Risica was
removed from school in a strait jacket and that he attempted to
stab Dumas with a letter opener.  (Id. at 27.)  Jacqueline Risica,
the plaintiff's mother, received a phone call from the father of
one of plaintiff's classmates asking whether it was true that
plaintiff had made a "hit list."  (Dkt. # 124 Ex. 3 at 19-20.)

### III.  Discussion

Plaintiff brings a Fourteenth Amendment procedural due process
claim and two different Fourteenth Amendment substantive due
process claims.  The court discusses each in turn.

### A.  Procedural Due Process Claim

The court finds that plaintiff's procedural due process claim
has been abandoned.  The claim was addressed in defendant's
memorandum, (Dkt. # 116 at 9-11), but has gone unaddressed in
plaintiff's response.  When a party fails to address one of the
moving party's grounds for summary judgment, the court may deem the
claim abandoned and grant summary judgment in favor of the moving
party on that ground.  Taylor v. City of New York, 269 F. Supp. 2d

68, 75 (E.D.N.Y. 2003).

Even assuming arguendo that the claim has not been abandoned, there is no evidence on the record to support a procedural due process claim. In <u>Goss v. Lopez</u> 419 U.S. 565 (1975), the Supreme Court specifically addressed the procedure due a student facing a suspension of ten days or less, stating "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." <u>Id.</u> at 581 (1975). Plaintiff concedes that he and his parents were informed about the decision to suspend him in response to the "hit list," that he admitted to making the list, and that the suspension was justified. Thus, plaintiff received all the process that was due him under the Fourteenth Amendment. Defendant's motion for summary judgment on this claim is therefore **GRANTED**.

**B.    Substantive Due Process Claim:**
**     Failure to Respond to Bullying**

The court begins the analysis of this claim with a reminder that although education is "perhaps the most important function of state and local governments," <u>Brown v. Board of Education</u>, 347 U.S. 483, 493 (1954), the Supreme Court has held that it is not a fundamental right and, therefore, not subject to strict scrutiny review. <u>San Antonio Indep. Sch. Dist. v. Rodriguez</u>, 411 U.S. 1, 35 (1973).

In the present case, plaintiff is not challenging the constitutionality of a state statute, local ordinance or school policy. Rather, plaintiff is claiming that the action or inaction by Principal Dumas in response to the harassment by other students directed towards the plaintiff amounted to a violation of the Fourteenth Amendment. In effect, plaintiff claims that the school was under a Fourteenth Amendment obligation to protect him from harm which, plaintiff admits, was directly caused by private third parties.

In these types of cases courts have taken a two-pronged approach. First, courts consider whether the plaintiff is being held in state custody against his will. As a general rule, "a state's failure to intervene to prevent harm to an individual by a private actor is not a constitutional violation." Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999) (citing DeShaney v. Winnebago County, 489 U.S. 189 (1989). However, courts have carved out an exception in cases of confined persons, like prisoners, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), and mental patients involuntarily committed by the state. Youngberg v. Romeo, 457 U.S. 307 (1982). Under these circumstances, the state will be held constitutionally liable for failure to prevent harm resulting from the actions of a private person if the state acts with deliberate indifference to the welfare of the person in custody. Farmer v.

-7-

<u>Brennan</u>, 511 U.S. 825, 837 (1994).[3]

Every circuit presented with the issue has held that a public school student is not a confined individual, irrespective of compulsory education laws or the school's duty to act in loco parentis. <u>Hasenfus</u>, 175 F.3d at 71-73 (First Circuit); <u>Wyke v. Polk County Sch. Bd.</u>, 129 F.3d 560, 569 (11th Cir. 1997); <u>Doe v. Hillsboro Indep. Sch. Dist.</u>, 113 F.3d 1412, 1415 (5th Cir. 1997); <u>Doe v. Claiborne County</u>, 103 F.3d 495, 510 (6th Cir. 1996); <u>Graham v. Indp. Sch. Dist. No. I-89</u>, 22 F.3d 991, 994 (10th Cir. 1994); <u>Dorothy J. v. Little Rock Sch. Dist.</u>, 7 F.3d 729, 732 (8th Cir. 1993); <u>D. R. v. Middle Buck Area Vocational Tech. Sch.</u>, 972 F.2d 1364, 1372-73 (3d Cir. 1992); <u>J.O.  v. Alton Cmty. Unit Sch. Dist. 11</u>, 909 F.2d 267, 272-73 (7the Cir. 1990).  In this district, Judge Chatigny has observed that the Second Circuit has not had the opportunity to address this issue, but that there is also no reason to suggest that Second Circuit would deviate from the pattern of case law from the other circuits.  <u>See</u> <u>Bungert v. City of Shelton</u>,

---

[3]     The court acknowledges that it is the Eighth Amendment's prohibition against cruel and unusual punishment, not the Fourteenth Amendment, which protects prisoners confined after the state has "secured a formal adjudication of guilt in accordance with due process of law." <u>Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 244 (1983).  With respect only to these narrow cases where the question is whether the state is constitutionally liable for harm done to a person in its custody by a private actor, courts have found the protections afforded by the Fourteenth Amendment to those involuntarily confined or those detained before trial analogous to the Eighth Amendment protections guaranteed prisoners serving post-trial sentences.  <u>Id.</u> at 244-45.

No. 3:02-CV-01291 (RNC), 2005 U.S. Dist. Lexis 23894, at *12 (D. Conn. Oct. 14, 2005).    The court agrees with Judge Chatigny. There is little doubt that the Second Circuit would find that students are not confined individuals for the purposes of a Fourteenth Amendment analysis.  Having established as a matter of law that the plaintiff was not a confined individual, the court must, under the second prong in the analysis, determine whether the School owed Risica any constitutional duty to protect him from harassment by other students.

A state actor cannot be held constitutionally liable for failure to prevent harm where the plaintiff is not a confined individual and the harm alleged is the sole result of actions taken by a private individual. DeShaney, 489 U.S. at 202. If, however, the governmental agent takes affirmative action which exacerbates the harm to the plaintiff then the plaintiff may have a cognizable Fourteenth Amendment claim if "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).

Moving now to the present case, the court finds that defendant is entitled to summary judgment with respect to this claim.  The facts, construed in plaintiff's favor show that he was subjected to verbal harassment or, as he puts it, "bullying" which was both hurtful and sexually degrading.  Under ideal circumstances a school

-9-

official would have intervened and stopped the bullying before it could cause the emotional damage which it is alleged to have inflicted on the plaintiff.  However, the School's failure to prevent the bullying from continuing does not rise to the level of a constitutional violation.  The school was under no constitutional duty to prevent the student-on-student harassment.  Whether the School had an affirmative duty to protect the plaintiff under common law is not in question here.  There may be circumstances where state tort law places a duty on the school district to protect its students from student-on-student harm.  Nevertheless, the "Due Process Clause of the Fourteenth Amendment...does not transform every tort committed by a state actor into a constitutional violation."[4] DeShaney, 489 U.S. at 202.

Finally, the court finds that the affirmative step taken by Principal Dumas towards stopping the harassment (e.g. talking with the harasser) is not, as a matter of law, "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 411 U.S. at 35.  A middle school principal may reprimand one student for bullying another without running afoul of the Fourteenth Amendment.

Defendant's motion for summary judgment on this count is,

---

[4]

The court in no way intends through its discussion of the due process issue to pass on the merits of the state law claims raised in the instant case.

therefore, GRANTED.

## C.    Substantive Due Process Claim: Invasion of Privacy

Plaintiff claims that the alleged disclosure of personal information by the defendants amounts to a violation of his right to privacy under the Fourteenth Amendment.  At the outset, the court notes defendant's argument that the court should not address the merits of this constitutional invasion of privacy claim because the claim is not included in the complaint and is being raised for the first time in plaintiff's memorandum in opposition.  The court finds that, if liberally read, the complaint could be interpreted to include a constitutional invasion of privacy claim.  Therefore, the court will address the merits of the claim.

Plaintiff's constitutional invasion of privacy claim involves his substantive due process right in avoiding public disclosure of personal matters.  Whalen v. Roe, 429 U.S. 589, 600 (1977).  The first element of the claim requires the plaintiff to show that he had a privacy interest in the information allegedly disclosed.  To make this showing, the plaintiff must demonstrate that he had a reasonable expectation of privacy.  Sean R. v. Bd. of Educ. of Woodbridge, 794 F. Supp. 467, 469 (D. Conn. 1992).  Plaintiff must next show that the government actually disclosed this information or that a state statute, regulation or policy required the disclosure.  See Soucie v. County of Monroe, 736 F. Supp. 33, 35-37 (W.D.N.Y. 1990).  Finally, if the first two elements are resolved

-11-

in plaintiff's favor, the court will then determine if the government action was taken in furtherance of "important governmental objectives and...substantially related to achievement of those objectives." Craig v. Boren, 429 U.S. 190, 197 (1976); Statharos v. New York City Taxi & Limousine Comm'n, 198 F.3d 317, 324 (2d Cir. 1999) (holding that in these cases the Second Circuit uses "intermediate" or "elevated" scrutiny).  If the government action survives this level of scrutiny, the governmental actor is not liable even though she disclosed information in which the plaintiff had a reasonable expectation of privacy.

In this case, plaintiff argues that the Family Educational Rights and Privacy Act ("FERPA") "is indicative of Congress' intent to recognize privacy rights of students and parents and provide for penalties to schools which violate them."  (Dkt. #123 at 4.) Plaintiff contends that FERPA established his expectation of privacy with regard to the information covered under the act.  This interpretation of plaintiff's argument is consistent with plaintiff's citation to Soucie which held that the reasonable expectation of privacy "depends upon the relevant statutory restrictions governing disclosure." 736 F. Supp at 36.  Plaintiff then goes on to argue that the defendant, Principal Dumas, publicly disclosed the allegedly protected information by telling her support staff. The support staff then spoke about plaintiff's situation loud enough to be heard by other students.  Plaintiff

also argues that it was impermissible for Dumas to tell the female
student named on the "hit list" about the incident.

As an initial matter, the court is doubtful that the Supreme
Court would be persuaded by plaintiff's argument that FERPA creates
a reasonable expectation of privacy in students actionable under a
Fourteenth Amendment invasion of privacy theory.  In <u>Gonzaga
University</u> 536 U.S. 273, the Supreme Court held that "there is no
question that FERPA's nondisclosure provisions fail to confer
enforceable rights." <u>Id.</u> at 287.  In so holding, the court pointed
to the Act's lack of "right-creating" language, its focus on
institutional policy rather than individual instances of
disclosure, and the Act's general aim towards creating
prerequisites to federal funding as evidence of Congress' intent
not to create an individual cause of action.  Thus, the Supreme
Court has clearly and unambiguously stated that a disclosure in
violation of the terms of FERPA is not a cognizable individual
claim.

Instead of attempting to bring a FERPA claim directly before
the court under 42 U.S.C. § 1983, the plaintiff is attempting to
circumvent the holding in <u>Gonzaga University</u> by using the
Fourteenth Amendment as a backdoor.  The court doubts that any
provision of FERPA can be said to create a reasonable expectation
of privacy in an individual after <u>Gonzaga University</u>.  However, the
court does not use this a ground for its decision and has

-13-

considered FERPA's provisions when analyzing whether plaintiff had a reasonable expectation of privacy in the information involved in this case.

Plaintiff claims that there was an impermissible disclosure of two different pieces of information: (1) the existence of the "hit list" and (2) the fact that he was suspended for ten days. Plaintiff clearly had no expectation of privacy in the existence of the "hit list." First, the "hit list" is simply not an "education record" which FERPA seeks to protect. See 20 U.S.C. 1232g (a)(4)(A); 34 C.F.R. 99.3. Additionally, plaintiff admits that the "hit list" was written on the cover of his geography book and found by a janitor. Thus, the list was open for public inspection. The court therefore finds that plaintiff had no expectation of privacy in the existence of the "hit list." The court does find, however, that material facts in dispute do exist which could lead a jury to conclude that the plaintiff had a reasonable expectation of privacy in any record or letter of discipline regarding his suspension. If a jury did make such a determination the question would then become whether the private information was actually disclosed.

As evidence that "Defendant Dumas disclosed private information to defendants Schroder and Woodworth and to [the female student named in the "hit list"] plaintiff cites Exhibit 3 at pages 11-14 and Exhibit 4. Exhibit 3 contains excerpts from the deposition of Jacqueline Risica. The pages cited do not support

-14-

plaintiff's contention that Dumas disclosed private information. The pages cited address the extent and nature of the bullying, the students involved in the bullying and communication between Jacqueline Risica and Principal Dumas regarding the bullying. Exhibit 4 is an instant message communication between Justin Risica and the female student named in the "hit list." The relevant portion of the communication is as follows:[5]

> **[Female Student]** u don't know me? i thought i was on ur hit list
> **[Risica]** how did you get my screen name?
> **[Female Student]** oh god i definately have connections
> **[Risica]** NONE...of the rumors that went around were true
> **[Female Student]** well i know i was on ur a hole list
> **[Risica]** there wans'nt a list
> **[Risica]** see RUMORS, GOSSIP thast all you seem to be good for
> **[Female Student]** mrs.dumas pulled me aside and she told me one day that i was not on a hit list and i was in no danger but i was on ur a hole list
> **[Risica]** well lies that is what u seem to be good for also
> **[Female Student]** bc u just said there was no list and mrs.dumas told me ther was a list

(Dkt. # 124 Ex. 4).

    Exhibit 4 certainly corroborates what Principal Dumas has herself admitted, that she told the female student that she was on an "asshole list" created by Risica. However, neither Exhibit 4 nor any other piece of evidence on the record show that Dumas told

---

[5]
    The court has chosen to reproduce the instant message verbatim, with the exception of omitting the actual screen names, rather than making multiple notations of spelling, grammar and typographical issues.

the female student about plaintiff's suspension.  Thus, there is no evidence of disclosure of any potentially private information to the female student.

With regard to whether Principal Dumas disclosed private information to her administrative staff, defendants Schroder and Woodworth, the court finds that a jury could determine, based on the evidence on the record, that Dumas did tell her staff about plaintiff's suspension.  However, the court finds, as a matter of law, that the potential disclosure was done in furtherance of an important governmental objective and substantially related to that objective.  Principal Dumas suspended the plaintiff based on concerns over the safety of the School's students and a need to maintain student discipline.  School safety and student discipline are clearly important governmental objectives.  Further, Principal Dumas's act of informing her support staff about the suspension was substantially related to the important governmental objectives. The court agrees with defendant's argument that "[p]rohibiting such communication would make administration of the school difficult, and would require that staff members could not draft letters regarding students, set up appointment for meetings or disciplinary action, or complete any filing in a student's educational records."

Therefore, based on the above discussion, the court finds that no evidence in the record could support a jury determination that defendant Dumas invaded plaintiff's privacy in violation of his

-16-

Fourteenth Amendment due process rights.  Defendant's motion for summary judgement is therefore GRANTED on this count.

**C.    Qualified Immunity**

"The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Poe v. Leonard, 282 F.3d 123, 131 (2d Cir. 2002).  Thus, defendant Dumas is also entitled to summary judgment based on qualified immunity if the constitutional violations alleged by the plaintiff were not clearly established at the time of the alleged violation.  The court finds that Dumas is entitled to qualified immunity on both counts.

On the failure to intervene count, as the court has already discussed, clear Supreme Court precedent, valid at the time of the alleged violation, held that the school had no duty to prevent the student-on-student harassment. DeShaney v. Winnebago County, 489 U.S. 189 (1989).  A reasonable principal in Dumas's place would have believed that she was not **_constitutionally_** obligated to do anything about the harassment.  It is, however, unrealistic from a practical perspective to expect a middle school principal to sit idly by while known student-on-student harassment goes on.  In this case, Principal Dumas chose to speak with the alleged harasser. Having chosen to act, the clearly established constitutional

-17-

requirement demanded that Dumas's actions not be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>Lewis</u>, 411 U.S. at 35.  No reasonable principal in Dumas's position would have believed that talking to the alleged harasser would violate the constitutional conscience shocking standard.

Likewise, Dumas is entitled to qualified immunity on the constitutional invasion of privacy count.  Plaintiff's theory that FERPA can create a reasonable expectation of privacy is extremely tenuous in light of <u>Gonzaga University v. Doe</u>, 536 U.S. 273 (2002). However, the court notes that the violations alleged here took place in 2000 and 2001, before the holding in <u>Gonzaga University</u>. The court further acknowledges that in 2001 one could have made a tenable argument that FERPA did establish a reasonable expectation of privacy under the Fourteenth Amendment.  <u>See</u> <u>Warner v. St. Bernard Parish Sch. Bd.</u>, 99 F. Supp. 2d 748,752 (E.D.L.A. 2000)(holding that FERPA creates a reasonable expectation of privacy in a parent over a child's educational records for the purposes of the Fourteenth Amendment).

The court, however, does not find that defedant Dumas is entitled to qualified immunity in this case because, as a matter of law, FERPA cannot create a reasonable expectation of privacy. Rather, assuming that FERPA can establish such a privacy interest, the court concludes that no reasonable principal in Dumas's

position would have believed that the actions taken by Dumas violated that interest.  No reasonable principal in Dumas's position would have believed that telling her support staff about a student's suspension would have constituted a violation of the Fourteenth Amendment.  Finally, no reasonable principal would have believed that FERPA covered the "hit list" or that plaintiff had any generalized reasonable expectation of privacy over the list in light of the fact that it was written on the cover of a geography book.

**D.    State Law Claims**

Having dismissed all of the federal claims against defendant Dumas the court declines to exercise supplemental jurisdiction over plaintiff's state law claims.  They are therefore dismissed without prejudice to bringing them in the Superior Court of the State of Connecticut.

## IV.    <u>Conclusion</u>

For the reasons stated herein, defendant's motion for summary judgment **(Dkt. # 115)** is **GRANTED** in all respects.  Judgment will enter for the defendant Dumas.  This case is before the undersigned pursuant to  28 U.S.C. § 636(c) and D. Conn. Magis. R. 73(A)(1).  This is not a recommended ruling and not appealable to a district judge.

IT IS SO ORDERED

Dated at Hartford, Connecticut this 17th day of November, 2006.


/s/ Thomas P. Smith
Thomas P. Smith
United States Magistrate Judge